Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and its Honorable Court. Good morning. Welcome to the 11th Circuit. Today we have four cases on for oral argument. I think you're all familiar with our timing system, but just as a reminder, please do try to stick to the time limits. Obviously if any of us ask questions that take you over the time limits, please answer those questions. We're asking them because we want to know the answers. But other than that, please do stick to the time limits. All right, we will begin today with United States of America versus Sir Roderick McCobb, and we'll hear first from Miss Howard. I'm sorry, from Miss Gershow. No, Miss Howard. That's correct. Thank you, Your Honor. Good morning, Your Honors. And may it please the court, Catherine Howard on behalf of Sir Roderick McCobb. There are two major reasons why the government failed to prove that Mr. McCobb's Florida cocaine convictions are serious drug offenses. First, the statutory language shows that the Florida definition of cocaine is broader than the federal definition. And second, the government's argument to the contrary, made for the first time on appeal, conflicts with the statutory language and relies on a factual premise that has no basis in the record. Starting as we must with the statutory language, Florida controls any stereoisomer of cocaine, while the federal government controls only its optical and geometric isomers. The government acknowledges this plain statutory mismatch, but argues with no support that it is a distinction without a difference. But the statutory language tells us otherwise and establishes that the Florida definition is overbroad. And I have two reasons that I would like to explain to Your First, elsewhere in Section 893.03, Florida controls optical isomers and geometric isomers of other substances. So the Florida legislature knew how to limit a substance to its optical isomer and or geometric isomer if that's what it wanted to do. It did not do so for for cocaine, demonstrating that the term stereoisomer in relation to cocaine must be broader than simply optical or geometric isomers. The dilator case that we cited in our briefs is instructive on this point. There, the Seventh Circuit performed the same textual analysis on the Indiana controlled substances schedule to determine that the statutory mismatch between the state and federal definitions of methamphetamine rendered the state definition overbroad. The same can rule for Mr. McCobb, based on the plain statutory language alone, and the purposeful exclusion of the terms optical and geometric isomer from the cocaine definition. Miss Howard, why aren't we bound by United States versus Smith, the 2014 case, which stated that a violation of this deck section of the Florida statutes is a serious drug offense. And in particular, I want to know why this isn't simply an overlooked argument, which we've said doesn't prevent us from applying our prior panel precedent rule. Yes, Your Honor, this is not an overlooked argument of Smith, because the issue in Smith is entirely distinct. Smith issue, which we know, because the opinion sets it out in the very first sentence is whether the serious drug offense definition includes state offenses without an element of mens rea as to the illicit nature of the substance. So that is the issue that Smith was confronted with the only issue that Smith decided. And Smith's holding is that no, the definition does not require that state offenses have an element of mens rea. Nothing that this court decides in this case will conflict with that holding in any way. Because the issue here is not an overlooked argument, but it's a distinct issue regarding a different component of the serious drug offense definition. The component that requires that there be a controlled substance as defined in 21 USC section 802. Smith simply does not speak to to that component or to that requirement of the serious drug offense definition. And we know that here that requirement is not met for the reason that I was just explaining about the purposeful exclusion of the terms optical and geometric, but also because the rebutted expert report also shows that the florida's definition is overbroad on its face because the statutes do not define the terms optical isomer, geometric isomer or stereo isomer. We have to look to the scientific meaning of the terms and the scientific meaning of the terms as the report establishes is that the meaning of stereo isomer includes at least one category of isomers meso isomers that are not optical or geometric council. Uh, I couldn't find in your report where your expert said that there was a meso isomer of cocaine. Are that every chemical substance as meso isomers my overlooking something in that report? No, Your Honor. That's correct, Your Honor. But the report isn't opining about the meso about the substance of cocaine specifically. What the report is doing is simply defining the terms that already appear in the statute. I understand that. But if a term appears in the statute and there is no meso isomer of cocaine, then we don't have a problem. I think, Your Honor, if the government had put on proof that there is no meso isomer of cocaine now in council, I thought about that. But my energy conclusion is the burdens on you, not on the government. Your Honor, I agree that the burden on us to show a realistic probability that the Florida statute captures conduct that the federal government does not. And the way that we have met that burden is by pointing to the plain statutory language. And the statutory language shows that that that the that the statute covers any stereo isomer of cocaine. And we know you would you would agree with me that if it was stipulated that cocaine didn't have a meso isomer, you would lose, right? I would agree that that would be a much different position that we than I know it's different. That's why I'm asking. But you would lose. I think we would likely lose this case if unless you establish that cocaine has a meso isomer. Your Honor, I don't think that we need to establish that cocaine has a meso isomer. We need to establish that the statutory language is playing that the term stereo is that that the language of the definition of cocaine includes more than simply optical isomers and geometric isomers. And we've got no that that I don't think the language establishes that I mean, where in the statute does it say this includes meso isomers or this includes something other than the other two? Your Honor, the couple of points first that the Florida legislature uses the terms optical isomers and geometric isomers elsewhere in the statute. So if it wanted to limit cocaine to simply optical isomers and meso isomers, it knew how to do so. The fact that it did not tells us that the statutory language itself is indicating that stereo isomers include something more than optical and geometric. Or it tells us that other substances they wanted to outlaw had meso isomers, but we don't know that cocaine did. I think even putting aside the meso isomer specifically, Your Honor, it tells us that they're that the term stereo isomers is intended to capture more than simply optical and geometric isomers, and that renders it broader than the federal definition, regardless of whether it's meant to capture that for substances that has more that have more. But we don't that cocaine is one. Here's my question is simple thing for this expert to say. And oh, by the way, cocaine has a meso isomer, but she didn't do that. She didn't, Your Honor, because she was defining the terms that were already in the statute. And I would also point this court to every other circuit case, which we cited in our briefs, where the statutory language as here, um, is overbroad. And the government raised an argument that actually, despite this overbreadth, the way that it is overbroad is impossible. And no circuit has simply taken the government's word for it. And no circuit has put the burden on the defendant to disprove this negative. Instead, it has been the burden on the government to show that this court should ignore the statutory language because there is a possibility problem. It's the burden on the government at that point, because the statutory language has already, um, has already made it clear and satisfied the defendant's burden. And so that is, um, that is what the other circuit courts have done. And I think I suggest that that is what this court should do here, because there is no, let me ask you a question about if we were to agree with you and we were to vacate and remand on remand, do you think that the government would be able to put on proof or make this argument? You know, I can't speak to what the government could be, Your Honor, and obviously that we would welcome the opportunity to litigate this on remand. I would know that the government has never asked for the opportunity to make this argument on remand, has never suggested it would put on this proof. Um, so I can't speculate as to what whether it would, um, I would suggest that the most equitable, uh, outcome, although obviously any is within this court's discretion, is to remand or resentencing without the ACA enhancement and allow the government to make any argument and any scientific proof on this issue in a future case, which is what, so you're not arguing that the government has waived this in the district court or are you? Since I, I think that the government clearly failed to respond. It waived this opportunity, had one shot to prove that Mr McCabe is subject to the ACA enhancement and it failed to do so. And so I think the most equitable outcome would be to remand for resentencing without the enhancement and let the government make its argument. Should it so choose to present its proof if it has any in a future case, like in Lorenzo to in the Ninth Circuit and like in, um, in Dillett or in the Seventh Circuit. Thank you. Council will hear now from Mr Show. Good morning, Your Honor's and may it please the court. Holly Gershow on behalf of the United States. Let me start with Smith. Smith forecloses this argument and here's why the facts and Smith and the argument in Smith are the same. The fact in Smith is that his sentence was enhanced based on an 893.13 violation for sale of cocaine. The argument that he made is that his that that offense did not qualify as a serious drug offense. The fact in this case is that the defendant has convictions for sale of cocaine in violation of 893.13 and he is arguing that his conviction that that offense does not categorically qualify as a serious drug offense. Ask you a question about that. Council. Um, here's the thing. When we look at Schuller, Schuller tells us that there are basically two different ways that there can be a definition for, um, for an offense. One is by describing conduct and the other is actually definitional. It's got components and it seems to me, excuse me, like when we're looking at the definition of serious drug offense, that it's sort of a hybrid, right? I mean, we already know that the part that talks about involving manufacturing, distributing or possessing blah, blah, blah is an example of conduct. But then it says, um, a controlled substance as defined in section 102 of the Controlled Substances Act. Why isn't that part? Um, the definitional component part that is spoken of in Schuller and if it is, then how? How does Smith? Um, it seems like Smith does not address that. It's not an overlooked argument because it was never addressed at that point. It wasn't relevant to the mens rea aspect. And besides that, Schuller came out afterwards. So, um, let me turn it over to you to see if you can address that for me, please. Two points is one, Xavier Smith came out after Schuller and basically said nothing about Schuller changed the analysis in Smith, Travis Smith, the 2014 Smith. Second, um, the categorical approach requires that every part of the Florida statute falls within the scope of the definition of a serious drug offense. And so that would include that cocaine is a controlled substance under the ACCA. So when the court in the first Smith and in the second Smith said this offense is a serious drug offense, it had to have found that every part of the Florida statute matched every part of the federal definition of a serious drug offense. So that's why this is just another argument about why it doesn't categorically qualify. So it is an if you characterize the argument, you're loading the question, the answer into the question. The question, if you will, is whether it's an argument or an issue. Uh, if a defendant attacked a statute on grounds of, let's say, Sixth Amendment violates the Sixth Amendment and the court in the course of adjudicating that rejected that said this statute is constitutional period. And then another defendant in a different case comes in and says this violates the due process clause. We wouldn't say the prior panel precedent rule forecloses that because we said in the first case, the statute constitutional, would we? No, but you're on. In this case, we're talking about whether the statute categorically qualifies as a serious drug offense. No, no, we're talking about whether it fails to categorically qualify as a for a reason that's different from the first race. First case race, right? But that when that just be an overlooked argument as to why it didn't categorically qualifies. I think it would. Well, I think it would be an overlooked issue. It sort of depends on on the purpose of the prior panel precedent rule, and the purpose is to add stability, predictability and to repeat for one of a better term, a groundhog day kind of scenario on on federal appellate review and district court determinations. And you do that by addressing each issue or question as it comes up, as opposed to making broad statements that this this statute constitution or this statute. Oh, there's no problem with this statute relating to counting the serious drug offenses. But I think this if the corporate allow the macabre to make this argument, it would open up the court to re litigating over and over again issues about why the statute doesn't categorically qualify would lead to uncertainty. But not really. Not really. I mean, you eventually run out of issues. Maybe. And there's usually no reason that the first defendant through doesn't raise every conceivable issue he can think of. That's true, Your Honor. But even if the court didn't think Smith controls, I'd point the court to Gillen, which is also decided by McCobb. And in that case, the issue was whether the Florida drug schedule was divisible. And if so, was it divisible into a type of controlled substance that was a controlled substance under the CSA? And in that case, the court said that the Florida drug schedule is divisible and that the district court or I'm sorry, it was the BIA in that case because it's a removability case, but that the Shepard document showed that the defendant here had a conviction for possession of cocaine and cocaine is a controlled substance as defined in the CSA. So not only has this broader issue of the of Florida statute eight nine three point one three being a control, a serious drug offense been litigated, but also the specific issue of whether cocaine and the Florida schedule is the same cocaine as in the in the Controlled Substance Act has been litigated and decided as well. So I think Gillen also proposes the argument that is made here. But even if this issue and of course, court can't. And this would just be another overlooked argument as to why cocaine doesn't qualify as a controlled substance offense. But even and so this court should follow Smith and Gann, even if it's convinced that those cases missed a meritorious argument. But here this argument is not let me explain why. The burden is on the defendant, as my friend acknowledges, to show there's a realistic probability that the state statute reaches conduct that is not that is outside the scope of the Armed Career Criminal Act that now that burden can be met either by pointing to a case or by pointing to statutory language that itself creates a realistic probability. The statutory language here doesn't create a realistic probability. You have to go beyond the statute to determine if there is a if there's an overbreath problem, because on its face, both of these statutes apply to cocaine and their isomers. The Florida statute applies to cocaine and its stereo isomers. So you have to know what are cocaine stereo isomers before you can know if that if that reaches forms of cocaine that are not elite, that are not legal, that are legal under federal law. Miss Gershow, my understanding is that before the district court, the government did not argue that McCobb failed to show a realistic probability of Florida applying the statutory definition in this way. And furthermore, the government did not argue that meso cocaine isomers do not exist. Why hasn't the government waived those arguments? The government didn't make those arguments because the court, the district court found that these arguments were foreclosed by Smith. The district court would not have had any interest in hearing scientific arguments about why the expert report was wrong when the court had already decided that this was foreclosed by Smith. And that that decision by the district court was a reasonable decision and it's been consistent with the position the United States has taken position and consistent with the position that this court has taken in Gilbert and in Frazier. So I think it'd be really unfair to deprive the United States of the opportunity to make that argument when the district court didn't consider it because of the fact that it believed that the argument was foreclosed by precedent. Did the district court, did the did the government try to make those arguments and the district court shut it down? No, no, your honor, but the district court found that it was controlled. Had the district court said, I don't think that this is controlled by Smith, then the United States could have asked to call for the, for McCobb to call his experts so that they could have cross-examined the expert and asked the expert, are there things like mesocom, mesoisomers of cocaine? And, and the other thing is, of course, this court can affirm by it for any reason supported by the record. And here, just if you look at this expert report and you look at the plain language of the statute, does not create a realistic probability. This isn't like Ramos, where the issue was, does Georgia, is Georgia's theft statute overbroad? Because in Georgia's theft statute, it specifically applies to theft with intent to appropriate, which falls outside the scope of the generic definition of theft. You can look at that statute and say, this statute creates a, facially creates a realistic probability. The cases in the seventh circuit that McCobb relies on create this statutory mismatch test. And that test is incorrect and inconsistent with Moncrief, which articulates that the, there has to be a realistic probability. The whole point of this is that the categorical approach is supposed to make it so that there the offense that falls within the scope of the statute. But when you are looking at a statute that doesn't extend to that, there's no realistic probability that it does extend to that conduct. You're not, it's not serving the purpose of the categorical approach. Counsel, is it the defendant hasn't proven or shown that there is no meso isomer of cocaine? It's both. It is the United States position that there is no meso isomer of cocaine and that cocaine cannot have meso isomers based on the chemical, the shape of the molecule, because it does not have an internal plane. That's on the record below. But our position is that it's the burden. I'm sorry. I'm sorry. I missed that. That it, what did you say about that proposition in the record below? We didn't, we did not say anything about that in the record below. Okay. But your position, if there was a remand is there's no meso isomer and it can't have a meso isomer for cocaine. Correct. And I would also point to the various statutes in Gamboa. They sent it back because they said, well, they put positional isomers of methamphetamine in the that has to have meant something. They wouldn't have just put positional isomers in there if there weren't. And then on remand, it turned out, no, in fact, there are not positional isomers. Okay. And so the fact that these statutes are worded in this way doesn't have any bearing on whether or not these particular isomers exist, but the statutory language has to create the realistic probability, or they have to point to the case. And here the statutory language does not create the realistic probability because they had to put an expert report in to even try to explain what the text meant. So I would say this would be like, if there was a federal statute that said it's illegal to possess firearms on public trains and buses, and there was a state statute that's a Florida statute that said it's illegal to possess firearms on any forms of public of any Florida form of public transportation. Well, to know if those statutes, if that created a realistic probability, you have to know what the forms of public transportation are in Florida. And if the only forms of public transportation in Florida are trains and buses, the statutes are not overbrought. So they don't- But that seems different, right? I mean, the definition of whether Florida transportation includes just trains and buses is up to Florida law, right? But the definition of whether there are in fact stereoisomers is a fact of organic chemistry, right? I mean, that's not something that can be changed by legislation. There either are or are not stereoisomers of cocaine. Isn't that different? Well, the point was just to illustrate that when a statute refers to it's something, you have to know what that something is. And to your point with organic chemistry, we can know what and do know what the isomers of cocaine are. And so it's not enough just to say, well, there are in theory, other types of isomers for other molecules. You have to show there's act that this statute on its face applies to isomers of cocaine that would be legal under federal law. And that this statute facially doesn't show that. They had to put in a case where somebody had been convicted of a Florida drug, a Florida cocaine offense that would have been legal under federal law, and they have not done so. And so for these reasons and the reasons- Judges, may I ask one more question before council sits down? Of course. So we have a case called United States versus Canty, where we said remand for further proceedings is inappropriate when the issue was before the court and the parties had the opportunity to introduce relevant evidence. Here, the issue of the existence of cocaine meso isomers was before the district court and Dr. Bridges report was before the court. So why wouldn't remand for further proceedings in which the government could introduce evidence that there was never called to the stand and didn't testify. So we didn't get the opportunity to even cross examine her and test the validity of her report. And so I would say that we should at the very least have the opportunity to do that. Let me, let me, if I'm taking a little over, there's a problem with an evidentiary here. Is there not? I mean, this Florida statute means whatever the Florida statute meant when it was enacted. You can't have a factual hearing about that, I wouldn't think. Although the realistic, you're talking about the realistic probability issue. And the problem you can have with that too is the clear error review. Let's the district court. Here's a battle of experts. I don't know whether it's settled as a matter of organic chemistry or not. It seems to me like if it was, somebody would have cited us to an organic chemistry book somewhere or some learned journal that settled it. Y'all haven't done that. But if it's a factual issue, we go back and the judge here's battle of experts or whatnot. The there is no isomer of cocaine. Next defendant up, separate case, different judge said, judge, there's a, there's an isomer of cocaine, meso isomer. Here's my expert. Judge hears that thing and said, I make a determination that there is. And therefore, I rule in favor of the defendant. And neither one of them is clearly erroneous because both of them are based upon determinations of credibility based on the demeanor of the witness, so forth and so on. I just, I have a hard time wrapping my head around the fact that this is a evidentiary issue as a matter of a step as opposed to a matter of established scientific certainty, one way or the other or consensus of scientific experts. And if it's that, that's not evidence. That's something that that's established. We can, we can cite to sources that establish that or we can't. Well, your Honor, I did cite to a case, Bacchus that establishes what the isomers of cocaine are. The cocaine has eight isomers and all of those isomers are optical isomers. And my friend says, well, you know, that's might not be what the isomers are today, but that doesn't even make any sense because cocaine can only have any molecule can only have a certain number of theoretical isomers. And if you're talking about, I think what she's talking about is analogs where they come up with a cocaine-like substance, but that would not be cocaine and its isomers. We know what cocaine's isomers are. They are the eight isomers listed in that case. And all of those isomers are optic isomers. And as, and to your point as well, that's why when you, you have to look at the statutory language and say, is there an obvious over, is it obvious that this statute criminalizes forms of cocaine that would be legal under federal law? It is not obvious. Therefore, the burden on them is to show a case. And if they can't do that, then they haven't met the realistic probability test. You've answered my question, counsel. Thank you. Thank you, counsel. We'll hear again from Ms. Howard. Thank you, your honor, Katherine Howard on behalf of Mr. McCobb. I just had a few points that I wanted to address based on my friend on the other side's argument. First, just very briefly on Guillen. The issue in Guillen as Ms. Gershow correctly stated was whether 893.13 is divisible by type of substance. That was the issue in Guillen. And to the extent that Guillen states that cocaine is both a controlled substance under Florida and federal law, the courts and the party all assumed that the death statutory definitions matched. So to the extent that we can glean anything, any implication that those match, that would have just been an assumption that lurked in the record that would not bind this court in any way. Second, I wanted to address the Bacchus case that was mentioned, because that case, I do not think this court can rely on to make any sort of scientific determination about cocaine's isomers. The footnote that addresses the isomers of cocaine is not the holding of the case. We don't know exactly even where the court got that information. And although molecules have a limited number of isomers, that does not mean that the state of the science has developed in the last 40 plus years to identify what those isomers are and what they are. And also, if cocaine only has optical isomers, as was suggested, that means that the federal definition of cocaine, which includes optical and geometric isomers, when elsewhere the federal government controls only optical isomers of other substances, would be no more than spilled ink. It would also definition of cocaine in Illinois, which we know includes optical geometric and positional isomers, no more than spilled ink. And so the government would essentially be asking this court to disregard every legislative determination about what forms of cocaine it wants to control, based on this footnote that we really can't take any reliance on. What would you say are your best cases for the proposition that the burden is on the government to show that cocaine cannot take the form of a stereoisomer? A couple of cases, Your Honor. First, I would point this court to the Dillator case. In that case, the Indiana controlled methamphetamine and its isomers, and the federal government controlled methamphetamine and its optical isomers. The court performed a textual analysis to determine that even though the statute controlled its isomers, it was nevertheless statutorily overbroad. And so the plain language of the statute rendered the definition broader than the federal definition. And although the government then on appeal, just like the government here, is bringing forward a position that the way in which it is overbroad is impossible. The court said, you know, we don't know any, we can't determine the isomeric nature of methamphetamine ourselves as a court of appeals. And I think that same logic applies here. And what the court did was say, government, you can raise that argument and present proof for that argument in a future case. And then also, I would point to the Rodriguez-Gamboa cases that we cited. And in that case, once again... Why does the government have to present evidence to that? Because it's the government's ultimate burden to prove that Mr. McCobb is subject to the Armed Career Criminal Act. Mr. McCobb had the burden of showing that the statutory language itself is overbroad. He met that cocaine as a meso isomer. He had to show that the, his burden was to show that the Florida definition is broader than the federal definition. And that because Florida controls stereoisomers, that that means more than optical and geometric. And he did that. Yeah, but it doesn't, but the hidden premise in your argument is that it also includes meso isomers, which is impossible if they're, which is impossible in a cocaine case. The thing I think that your argument is missing, or maybe I'm missing it from reading your argument, is that could very easily be a meso isomer of some controlled substance other than cocaine, which is why the statute covers it if there is one. But that doesn't mean that there is an isomer of cocaine. And therefore, it doesn't mean that the statute on its face includes something that the federal statute doesn't. It's just that that's speaking to all the controlled substances. No, Your Honor, and I think maybe, maybe if I'm understanding your question, the Florida government controlled stereoisomers only for cocaine and not for any other substance. In fact, only substance for which it controls stereoisomers. It controls for other substances, optical isomers, or geometric isomers. So we know because it specifically is controlling stereoisomers only for cocaine and not other substances, that there is a meaning to that choice. And that means that the statute is overbroad. All right. Thank you, counsel. I think we have your argument.